# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

**JOHN BASIL GORDAN,**

    **Plaintiff,**

v.                                  Case No. 6:22-cv-1559

**EQUIFAX INFORMATION SERVICES, LLC,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **JOHN BASIL GORDAN**, by Counsel, and for his Complaint against **EQUIFAX INFORMATON SERVICES, LLC**, he alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorneys' fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

2. Equifax is one of the three major consumer reporting agencies ("CRAs") in the United States.

3. CRAs that create and sell consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities that furnish them information, like Capital One Bank USA N.A.

4. The Consumer Financial Protection Bureau has noted that "experience indicates that [CRAs] lack incentives and under-invest in accuracy." CONSUMER FIN. PROT. BUREAU, *Supervisory Highlights Consumer Reporting Special Edition* 21 (Issue 14, March 2, 2017).[1]

5. Statutes like the FCRA provide consumers with the only mechanism by which they can force CRAs and furnishers to report accurate information about them.

6. The FCRA demands reporting agencies like Equifax utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

7. Plaintiff brings claims under § 1681e(b) against Equifax because it reported that inaccurately that he was deceased based on information provided by Capital One Bank.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

9. Venue is proper in this District because the violations occurred in this District, and the Defendant transacted business within this District.

## PARTIES

10. Plaintiff John Basil Gordan is a natural person who resides in Oakland, Florida. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

11. Equifax conducts business in the State of Florida through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

12. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer and consumer credit reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

---

[1] *Available at* https://files.consumerfinance.gov/f/documents/201703_cfpb_Supervisory-Highlights-Consumer-Reporting-Special-Edition.pdf (last visited May 6, 2020).

13. Equifax disburses such reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

### *Section 1681e(b) of The Fair Credit Reporting Act Requires the reporting of accurate information*

14. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

15. "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

16. Further, as Equifax is aware, Courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) and that this is "central" to the CRAs' duties of care under that portion of the Act:

This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

17. It has long been the law – since 1970 in fact – that:

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[2]

### *Plaintiff Discovers Equifax is Inaccurately Reporting Him as Deceased*

18. In June 2021, Plaintiff received three letters from Capital One Bank USA, N.A. regarding three separate accounts addressed to the *Estate of Basil E. Gordan*. Capital One offered its condolences and advised that these accounts were restricted from further use because Basil E. Gordan was deceased.

19. Plaintiff obtained a copy of his Equifax Consumer Disclosure in September 2021 and learned that Capital One was reporting the status on all four of his accounts that "Consumer is Deceased".

20. Also in the fall of 2021, Plaintiff applied for a loan to purchase a dump truck and was subsequently denied because he had been reported as deceased.

21. Plaintiff is certainly not deceased.

22. Equifax knew that Plaintiff was and is alive because of other information in his credit file, including recent payment histories from his creditors showing that he continues to timely pay his bills.

---

[2] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary interpretations/110720fcrareport.pdf.

4

23. Only the living typically pay bills.

24. Despite this discrepancy in information Equifax possessed, Equifax continued to maintain the notation on Plaintiff's credit file that he was deceased.

25. Defendant has been sued thousands of times in federal court by consumers alleging that it violated the FCRA by reporting individuals as deceased when they were not.

### *Equifax's Conduct Was Willful*

26. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

27. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff" and a failure to make the correction right away. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008). Further, a lack of any internal procedures to anticipate or prevent inaccuracy is willful. *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 249–50 (4th Cir. 2017).

28. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

29. The FCRA requires that Defendant must follow procedures which assure that the reports it sells meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

30. Equifax does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

31. Equifax does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

32. Equifax employs no procedures at all which assure that a consumer with a "deceased" mark on his report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

33. Such a policy is unreasonable for a number of reasons, not the least of which that Equifax nearly always possesses other information – such as that the consumer is paying his bills or creditors are accessing the consumer's information at Equifax for purposes of making a present decision about granting the consumer credit – showing that the consumer is indeed alive.

34. Even in instances where other data on the fact of the consumer's report indicates that he is not deceased, Equifax employs no procedures which assure that a consumer with a "deceased" notation on his report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

35. Once a "deceased" mark is placed on a consumer's report, Equifax will not calculate and will not provide a credit score for that consumer.

36. Defendant knows that living consumers are turned down for credit specifically because Defendant is reporting them as "deceased".

37. Equifax further knows that reporting a consumer as deceased is the most-harmful notation that can be attached to one's credit. There is no more derogatory notation—not bankruptcy, foreclosure, or repossession—than reporting a consumer as deceased.

38. Defendant is therefore aware that reporting a consumer as deceased is devastating to the consumer because it effectively halts the consumer's ability to engage in the credit market. Virtually all creditors view the deceased moniker as an indicator of fraud and, after seeing it attached to the file of someone who applies for credit, will refuse to grant credit to that customer.

39. Defendant has been on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Defendant is reporting them as "deceased" and without a credit score.

40. Equifax has received and documented thousands of disputes from consumers complaining that their Equifax credit reports have them erroneously marked as "deceased".

41. Equifax knows that thousands of consumers are erroneously marked as "deceased" on their Equifax credit reports via an erroneous furnishing of the "X" code, but said consumers are not on the Death Master File and are in fact, alive.

42. Nevertheless, Equifax employs no procedures which assure that a consumer marked as "deceased" on Equifax's reports are, in fact, deceased.

43. Defendant also does not employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

44. At all times pertinent hereto, Equifax was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Equifax.

45. At all times pertinent hereto, the conduct of Equifax as well as that of its agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff.

46. At all times relevant to this Complaint, Defendant's conduct was willful and carried out in reckless disregard for consumers' rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known or so obvious it should have been known by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

47. Equifax's conduct was likewise willful because it indiscriminately noted Plaintiff as deceased when it knew from its litigation and Plaintiff's own credit history that he is alive.

48. Defendant's procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

**CLAIMS FOR RELIEF**

**COUNT I:**
**VIOLATION OF § 1681e(b) of the FCRA**

49. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

50. Equifax willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintained concerning the Plaintiff. Despite Equifax knowing or at least having reason to know Plaintiff was alive, it published his credit report to creditors indicating Plaintiff was deceased.

51. As a result of Defendant's conduct, Plaintiff suffered particularized and concrete injuries, including being robbed of his congressionally mandated right to accurate and complete credit reporting under the FCRA, loss of the ability to purchase and benefit from a credit, reduction in credit score, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to explain why he lost the ability to benefit from credit.

52. Equifax's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

53. Plaintiff is further entitled to recover his costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## JURY DEMAND

54. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendant; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief; and such other relief the Court deems just and proper.

August 30, 2022.

Respectfully Submitted,

**BASIL E. GORDAN,**

    */s/ Craig C. Marchiando*
Craig Carley Marchiando, Fla. Bar #1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
757-930-3660 – Telephone
757-930-3662 - Fax
Email: craig@clalegal.com

*Counsel for Plaintiff*